OPINION OF THE COURT
Leland DeGrasse, J.
"The struggle continues. Lawsuits all around the country are now challenging the inherent inequities in the funding of school districts with local property taxes — creating huge disparities in the resources available to children in city and suburban districts” (Forty Years and Still Struggling, NY Times, May 18, 1994, at A 22).
The motions before this court challenge the legal sufficiency of pleadings filed in two such lawsuits. The City of New York and the Board of Education of the City of New York have filed a complaint (hereinafter the municipal complaint) for, inter alla, a judgment declaring unconstitutional and granting injunctive relief with respect to the method for distributing funds to local school districts under New York State’s education aid scheme. Similar relief is sought in the companion action brought by the Campaign for Fiscal Equity, Inc. (CFE), various New York City Community School Board Districts and parents of New York City public school pupils.
The first causes of action of both complaints are based upon *496 alleged violations of NY Constitution, article XI, § 1, the education article. The second causes of action are based upon alleged violations of the Equal Protection Clauses of US Constitution, 14th Amendment, § 1 and NY Constitution, article I, § 11. The third cause of action of the municipal complaint and the fourth cause of action of the CFE complaint are based upon alleged violations of the Civil Rights Act of 1964 (42 USC § 2000d et seq.) and regulations promulgated thereunder. The third cause of action of the CFE complaint is based upon alleged discrimination on account of race and color which is also proscribed by NY Constitution, article I, § 11.
Defendants assert that the City of New York, the Board of Education and the Community School Boards lack the capacity to bring this action. In general, municipalities and school boards lack the substantive right to challenge the constitutionality of acts of the State Legislature (Matter of Jeter v Ellenville Cent. School Dist., 41 NY2d 283, 287). The doctrine is based upon the principle that local governments, as political subdivisions created by the sovereign State, exercise their power subject to the State’s direction and control. As such, impairment of those powers raises no constitutional issue (Town of Black Brook v State of New York, 41 NY2d 486, 488). The rule, however, has its exceptions. For example, a State act may be challenged by a municipality where it would require the municipality to violate a constitutional proscription (see, Matter of Jeter v Ellenville Cent. School Dist, supra, 41 NY2d, at 287). A municipality also has the capacity to sue where the act in question concerns proprietary rights conferred upon it by NY Constitution, article IX, the home rule article (see, Town of Black Brook v State of New York, supra, at 488-489). The instant claims for additional State school funding do not create such proprietary rights (see, Matter of Town of Moreau v County of Saratoga, 142 AD2d 864). The City and the plaintiff School Boards also lack the capacity to assert the constitutional and statutory claims on behalf of the school children who reside within the City. Generally, parties to lawsuits may assert claims on behalf of themselves but not others (Matter of MFY Legal Servs. v Dudley, 67 NY2d 706, 708). New York State Natl. Org. of Women v Terry (886 F2d 1339) cited by plaintiffs is distinguishable because there it was held that the City of New York as a municipality had standing to sue for the purpose of restraining a public nuisance caused by anti-abortion demonstrations (supra, 886 F2d, at 1361). No analogous municipal interests are alleged to exist in *497 the instant actions. Plaintiffs’ reliance upon Caulfield v Board of Educ. (486 F Supp 862, affd 632 F2d 999, cert denied 450 US 1030) is misplaced. In Caulfield the District Court found that local school board officials who had suffered some threatened or actual injury from putatively illegal action had standing to maintain a title VI action (486 F Supp, at 878). The standing issue was not reached by the Circuit Court of Appeals which affirmed the dismissal of the complaint on other grounds. The instant complaints do not allege the requisite injury to the municipal plaintiffs.
In 1982, the Court of Appeals held that the amalgam of statutory prescriptions for State aid to local school districts for the maintenance and support of public elementary and secondary education was constitutional under the education article of the State Constitution. (Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d 27, 35.) In reaching the conclusion the Court recognized the existence of significant inequalities in available financial support for local school districts resulting in significant unevenness of educational opportunities (Board of Educ., Levittown Union Free School Dist. v Nyquist, supra, at 38). The Levittown Court further acknowledged that these factors forced major cities such as New York, Buffalo, Rochester and Syracuse to provide instructional services and facilities of a lesser quantity, variety and quality than those provided in some other school districts (Board of Educ., Levittown Union Free School Dist. v Nyquist, supra, at 38). The Court was able to harmonize the aforementioned inequalities with the mandates of the education article (NY Const, art XI, § 1) of the State Constitution by concluding that the latter was intended to assure only a sound basic education as opposed to a State-wide equality of all public educational facilities and services (Board of Educ., Levittown Union Free School Dist. v Nyquist, supra, at 47-48).
The Court of Appeals noted that the Levittown plaintiffs and municipal intervenors advanced no claim that the educational facilities or services provided in their school districts fell below the State-wide minimum standard of educational quality and quantity fixed by the Board of Regents. (Board of Educ., Levittown Union Free School Dist. v Nyquist, supra, at 38.) The observation was not gratuitous and it provides the best available insight into the Court’s definition of "a sound basic education.”
Subject to the Legislature’s control, the Board of Regents is constitutionally empowered to exercise legislative and policy- *498 making functions with respect to the State’s educational system (NY Const, art XI, § 2; Education Law § 207). Statewide regulations are promulgated by the Commissioner of Education and approved by the Board of Regents (Education Law § 207). The said regulations set forth minimum educational standards for elementary and secondary schools in areas such as teacher certification (8 NYCRR 80.1 et seq.), availability of required Regents courses (8 NYCRR 100.2 [e]; 100.5), guidance programs (8 NYCRR 100.2 [j]), library facilities (8 NYCRR 91.1) and suitable building facilities (8 NYCRR 155.1 et seq.). The CFE complaint contains allegations of a widespread failure of New York City public schools to meet minimum standards of Regents and the Commissioner in the foregoing specific areas and others. These specific allegations sufficiently buttress the CFE plaintiffs’ assertion that "[djefendants have not adopted a systematic method for financing education to assure the provision of a sound basic education for all students throughout the State.” The municipal plaintiffs’ complaint, although primarily focused upon alleged inequalities of educational opportunities, does refer to the New York City schools’ failure to meet State-wide minimum standards in building and library facilities.
The Appellate Division, Second Department, has recently affirmed an order dismissing a complaint which similarly challenged the constitutionality of the State’s public school financing scheme (Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo, 199 AD2d 488). As noted by the Court, the R.E.F.I.T. plaintiffs did not allege any failure on part of the State to provide students with a sound basic education. The R.E.F.I.T. IAS Court similarly noted the absence of an allegation that education had become inadequate or below minimum standard (Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo, 152 Misc 2d 714, 718). Unlike the R.E.F.I.T. complaint, the pleadings before this court contain allegations of a "gross and glaring inadequacy” which would possibly warrant judicial intervention in the school financing system (see, Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d 27, 48-49, supra). R.E.F.I.T. is, therefore, readily distinguishable with respect to the claimed violations of the education article (NY Const, art XI, § 1).
Based upon the foregoing, this court equates the provision of a sound basic education within the contemplation of Levittown (supra) with adherence to minimum educational standards approved by the Board of Regents. Accordingly, *499 both complaints sufficiently allege violations of the education article (NY Const, art XI, § 1).
The Levittown Court also found the statutory prescriptions for State and local school districts to be compatible with the Equal Protection Clauses of the Federal and State Constitutions (Board of Educ., Levittown Union Free School Dist. v Nyquist, supra, at 35). Following the holding of San Antonio School Dist. v Rodriguez (411 US 1), the Court rejected the Levittown plaintiffs’ equal protection claims based upon a lack of State aid to compensate for disparities in per pupil expenditures caused by differences in the value of assessable property among school districts. The claims were rejected pursuant to the Court’s determination that use of the rational basis standard was proper for examination of the State’s public school financing system (Board of Educ., Levittown Union Free School Dist. v Nyquist, supra, at 41). The complaints before this court mandate a similar disposition of plaintiffs’ equal protection claims. Notwithstanding allegations of a wide rift between affluent and poor school districts, the financing system challenged today appears to be identical to the one passed upon by the Levittown Court.
The standard of more careful scrutiny urged by plaintiffs is applicable when challenged State action has resulted in intentional discrimination against a class of persons (Board of Educ., Levittown Union Free School Dist. v Nyquist, supra, at 43-44). In both complaints it is alleged that the system of State aid for school funding with its inherent inequalities results in reduced educational resources for minority children who compromised 81% of the City’s 1990-1991 public school enrollment. Neither complaint, however, sets forth a requisite claim of intentional discrimination which would trigger a heightened scrutiny analysis.
Defendants correctly cite Alexander v Choate (469 US 287) for the proposition that plaintiffs’ claims based upon title VI of the Civil Rights Act of 1964 (42 USC § 2000d et seq.) are also dependent upon a showing of deliberate discrimination. However, violations of the regulations promulgated thereunder can be established by a mere showing of discriminatory effect (Guardians Assn. v Civil Serv. Commn., N.Y.C., 463 US 582). Both complaints allege violations of 34 CFR 100.3 which also prohibits discrimination based upon race, color or national origin. In both complaints it is alleged that the current school financing formula creates and perpetuates a dual system which adversely affects the quality of education available *500 to New York City’s predominately minority student body. Liability under the regulation has been sufficiently pleaded based upon the allegation that a substantial number of students are being deprived of meaningful education on the ground of race, color or national origin (see, Serna v Portales Mun. Schools, 499 F2d 1147).
The third cause of action of the CFE complaint is based upon a violation of NY Constitution, article I, § 11 which provides that "No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.” Citing People v Kern (75 NY2d 638, cert denied 498 US 824) defendants contend that the claim is not viable because the foregoing antidiscrimination clause prohibits discrimination only as to civil rights which are elsewhere declared by Constitution, statute, or common law. The argument is refuted by Executive Law § 291 (2) which provides that "[t]he opportunity to obtain education * * * without discrimination because of age, race, creed, color, national origin, sex or marital status, as specified in section two hundred ninety-six of this article, is hereby recognized as and declared to be a civil right.” A system which is discriminatory in effect albeit not in intent may violate civil rights recognized by the statute (State Div. of Human Rights v Kilian Mfg. Corp., 35 NY2d 201, 208; New York Inst. of Technology v State Div. of Human Rights, 48 AD2d 132, revd on other grounds 40 NY2d 316). Accordingly the instant claim of discrimination in violation of NY Constitution, article I, § 11 is viable without an allegation of discriminatory intent.
For the foregoing reasons, the motions are granted only to the extent that the entire municipal complaint and all claims asserted on behalf of the plaintiff Community School Board Districts in the CFE action are dismissed on the ground plaintiffs lack the legal capacity to sue. The second cause of action of the municipal complaint and the second cause of action of the CFE complaint are dismissed on the ground that they fail to state a cause of action. The third cause of action of the municipal complaint and the forth cause of action of the CFE complaint are also dismissed for failure to state a cause of action except to the extent that they are based upon alleged violations of 34 CFR 100.3. Defendants Marino and Rappleyea are granted leave to withdraw the branches of the motions by which they seek dismissal of the complaints on the ground of *501 absolute immunity. The motion by the United Federation of Teachers, the American Civil Liberties Union Foundation, the New York Civil Liberties Union Foundation, the Community Service Society of New York, District Council 37 of the American Federation of State, County and Municipal Employees, AFL-CIO (DC-37) and Local 372 of DC-37 for leave to appear as amici curiae is granted without opposition.